IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GUIDEONE ELITE INSURANCE
COMPANY,** *et al.*                                                                 **PLAINTIFFS**

V.                                         CIVIL ACTION NO. 2:13-CV-134-KS-MTP

**MT. CARMEL MINISTRIES,** *et al.*                                      **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

For the reasons stated below, the Court **grants in part and denies in part** GuideOne's Motion for Summary Judgment [101], **grants in part and denies in part** Seaway's Motion for Partial Summary Judgment [105], **grants** Mount Carmel's Motion for Partial Summary Judgment [107], and **grants** GuideOne's Motion to Exclude [103] the testimony of Mount Carmel's expert.

**I. BACKGROUND**

This is an insurance dispute arising from tornado damage to a church building belonging to Defendants, Mount Carmel Ministries and Alpha Christian School ("Mount Carmel"). Plaintiff, GuideOne Elite Insurance Company ("GuideOne"), issued a commercial property insurance policy [101-1] to Mount Carmel with effective dates of July 7, 2012, to July 7, 2013.

In August 2012, Mount Carmel defaulted on its mortgage loan. Its mortgagee, Defendant Seaway Bank and Trust Company ("Seaway"), accelerated the loan on August 13, 2012, demanding that Mount Carmel pay the full balance of $5,366,042.77 within five days [101-4]. Mount Carmel failed to satisfy the obligation, and Seaway served it with a notice of foreclosure on October 2, 2012 [101-6], scheduling a

foreclosure sale for November 7, 2012.

On October 29, 2012, GuideOne sent Mount Carmel a cancellation notice [101-7] with an effective date of November 20, 2012, and it refunded Mount Carmel's unearned premium. Guideone sent a copy of the notice to Seaway [101-8].

On November 7, 2012, Mount Carmel and Seaway entered into a forbearance agreement [101-11, 101-12], avoiding the foreclosure sale. In late November, Seaway discovered that GuideOne had cancelled Mount Carmel's commercial property policy. It bound $2,000,000.00 of force-placed coverage through its blanket insurance policy and another $5,312,228.00 of coverage through two excess force-placed policies with effective dates of January 7, 2013, through February 7, 2013.

On January 29, 2012, Mount Carmel provided notice [101-13] to GuideOne that the foreclosure did not occur and requested reinstatement of the policy.

Seaway did not renew the excess force-placed policies, and they expired on February 7, 2013. On February 10, 2013, a tornado struck the church, causing approximately $2.6 million worth of damage [101-23, 101-24]. On April 22, 2013, Seaway sent a letter to GuideOne, arguing that the cancellation was ineffective, and that the policy remained in force at the time of the tornado [101-25]. On April 23, 2013, Mount Carmel sent a similar letter [101-26].

On June 24, 2013, GuideOne filed this declaratory judgment action, seeking an order declaring that it is lawfully entitled to deny Defendants' claims for benefits because the policy was not in force at the time of the loss. The Court now addresses GuideOne's Motion for Summary Judgment [101], Seaway's Motion for Partial

Summary Judgment [105], Mount Carmel's Motion for Partial Summary Judgment [107], and GuideOne's Motion to Exclude [103] Mount Carmel's expert.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. GUIDEONE'S MOTION FOR SUMMARY JUDGMENT [101]

The primary issue presented by the parties' dispositive motions is whether GuideOne provided sufficient notice that it was cancelling Mount Carmel's policy. This

question is easily answered by reference to the policy and Mississippi law. First, the policy provides:

> **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
>
> **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
>
> **b.** 60 days before the effective date of cancellation if we cancel for any other reason.

Likewise, GuideOne agreed to "give written notice to the mortgageholder at least 30 days before the effective date of cancellation" in the event it cancelled the policy. Next, Mississippi Code provides:

> (1) A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal. This section shall not apply to nonpayment of premium unless there is a named creditor loss payee, in which case at least ten (10) days' notice is required.
>
> (2) The provisions of subsection (1) shall be incorporated into each liability, fire and multiperil policy issued or renewed after June 30, 1989; and if such provisions are not expressly stated in the policy, such provisions shall be deemed to be incorporated in the policy.

MISS. CODE ANN. § 83-5-28.

GuideOne admits that it provided notice of cancellation [101-7, 101-8] to both Mount Carmel and Seaway only twenty-three days prior to the effective date of cancellation. Therefore, the cancellation was ineffective under Section 83-5-28. *Id.* Furthermore, GuideOne breached the policy's requirements of sixty days' notice to the

insured and thirty days' notice to the mortgagee.

GuideOne argues that its cancellation was effective despite its failure to comply with the plain requirements of the policy and statute. The Court disagrees.

### A. Phoenix Ins. Co. of Brooklyn v. Hunter

First, GuideOne argues that the Mississippi Supreme Court's opinion in *Phoenix Insurance Company of Brooklyn v. Hunter*, 49 So. 740 (Miss. 1909), dictates that 1) the policy was cancelled and provides no coverage for the tornado damage, and that 2) Defendants waived their rights to enforcement of the policy's notice requirements.

In *Hunter*, the policy permitted cancellation by the insurer at any time "by giving five days' notice of such cancellation" and refunding the unearned premium. *Id.* at 740. On December 28, 1907, the insurer sent the insured a cancellation letter which immediately cancelled the policy, along with a check for the unearned premium. *Id.* The insured received the letter and retained the check without objection. *Id.* On January 6, 1908 – over five days after the notice of cancellation – the insured's property burned. *Id.* On January 7, 1908, the insured consulted an attorney, returned the check to the insurer, and made a claim on the policy. *Id.* The insurer denied any liability under the policy, claiming that the policy had been cancelled. *Id.* at 741.

The Mississippi Supreme Court effectively held that the insufficient notice became effective once the required time had passed without the insured objecting and returning the unearned premium check. *Id.* The Court stated:

> The action of the insurance company in this case was more than a mere expression of an intention to cancel this policy. It was an actual cancellation, in so far as they could effect it. Under the conditions of the

> policy, no cancellation could be effective until five days after the receipt of the notice by Hunter, but when the five days passed the policy stood canceled. The action of Hunter in retaining this check for the full period of five days without objection operated as a waiver of any right he may have had to object on the ground that the actual money for the premium paid by him was not tendered when the notice of cancellation was given.

*Id.* Therefore, the Court held that there was "no liability under th[e] policy on the part of the insurance company on the facts of the case." *Id.*

*Hunter* is inapplicable here. It only addresses the application of a policy provision and has no bearing whatsoever on the interpretation or application of Section 83-5-28, which was enacted over eighty years after *Hunter*. The statute requires that an insurer provide thirty days' notice before cancelling a policy for any reason other than failure to pay the premium. MISS. CODE ANN. § 83-5-28(1). Therefore, even if the Court were to interpret *Hunter* as mitigating GuideOne's failure to comply with the policy's requirement of sixty days' notice, it would not excuse its failure to comply with the statutory requirement of thirty days' notice.

GuideOne argues that the legislative intent of the statute was met insofar as Mount Carmel had over ninety days before the tornado to obtain replacement coverage. However, "[t]he primary rule of statutory construction is to ascertain the intent of the legislature *from the statute as a whole and from the language used therein.*" *Great Am. Ins. Co. v. Lowery Dev. LLC*, 576 F.3d 251, 255 (5th Cir. 2009) (emphasis added). While the Court "may look . . . to its historical background, its subject matter, and the purposes and objects to be accomplished," *id.*, "[w]hatever the legislature says in the text of the statute is considered the best evidence of the legislative intent." *MDOT v.*

6

*Allred*, 928 So. 2d 152, 155 (Miss. 2006). Here, the statute says that a "cancellation . . . is not effective . . . unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation . . . ." MISS. CODE ANN. § 83-5-28(1).[1] If the legislature intended there to be an exception to the notice requirement, it should have included one in the statute, which plainly requires an insurer to mail a notice of cancellation at least thirty days prior to its effective date. MISS. CODE ANN. § 83-5-28(1). GuideOne mailed Mount Carmel's notice of cancellation only twenty-three days before its effective date. Therefore, the notice of cancellation was ineffective. *Id.*; *Great*

---

[1] GuideOne cited the title of the 1989 bill introducing the notice requirement as evidence of the legislature's intent. *See* 1989 MISS. LAWS 410. However, "[c]aptions shall not constitute a part of the Mississippi Code of 1972 unless specifically so provided by law." MISS. CODE ANN. § 1-3-81(2); *see also Lewis v. Simpson*, 167 So. 780, 781 (title of an act may be resorted to as aid in discerning legislative intent and to relieve ambiguity in the body of the act). Furthermore, bills are routinely revised numerous times before passage, and the language used by a legislator in the title of an initial proposed bill says little about the collective intent of the legislature as expressed in the final statute.

GuideOne also cited Couch on Insurance, *see* 2 COUCH ON INS. § 32:52 ("The fact that the notice of cancellation does not allow the proper period of time is immaterial where the loss is sustained subsequent to the lapse of what would be the required period of time."), arguing that both the Fifth Circuit and Mississippi Supreme Court have relied on Couch in the past. However, GuideOne cited no case in which the Fifth Circuit or Mississippi Supreme Court ignored the plain wording of Mississippi law in favor of Couch's preferred public policy. GuideOne also cited numerous decisions from other jurisdictions, but they are all inapplicable here insofar as they do not address the interpretation and application of Section 83-5-28.

Finally, Reverend Fairley, Mount Carmel's pastor, executed an affidavit [101-22] on February 10, 2013, in which he declared that he was not covered under any insurance policy except Seaway's force-placed insurance which expired prior to the loss. GuideOne argues that the affidavit functions as an admission that its cancellation was effective, but it has not cited any authority holding that such an admission has bearing on the application of Section 83-5-28.

*Am. Ins. Co. v. Lowry Dev., LLC*, 524 F. Supp. 2d 778, 793 (S.D. Miss. 2007) ("When notice of cancellation . . . is not properly given, the legal effect is that the cancellation . . . is not effective."); *cf. Scottsdale Ins. Co. v. Deposit Guar. Nat'l Bank*, 733 So. 2d 863, 866 (Miss. Ct. App. 1999) (where insurer failed to provide statutory notice as required by Section 83-13-9, non-renewal was ineffective and there was no lapse in coverage, despite insured's actual knowledge of the cancellation).

### B.     *Substitution Theory*

GuideOne also argues that Seaway's claim is barred by the "substitution theory." The "substitution theory" is an equitable principle by which a "first insurer who has failed to comply with a standard mortgage clause is relieved of liability upon the issuance of other insurance." *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 72 (Miss. 1991). In other words, the "procurement of a new property insurance policy [can] effectuate the cancellation of an existing insurance policy." *Id.* at 73.

As with all equitable principles, however, facts are key to the theory's application. In *Carter*, the first insurer cancelled the policy but failed to provide notice to the mortgagee. *Id.* at 71. The insured procured a replacement policy from another insurer and notified the mortgagee of the cancellation and replacement policy. *Id.* The property burned down, and the replacement insurer paid its policy limits. *Id.* But the mortgagee released the entire payment to the insured, rather than applying it to the loan. *Id.* The Court held: "To permit the Bank to recover the policy proceeds from [the first insurer] would essentially mean permitting double recovery," insofar as it "had available to it funds to satisfy Carter's debt to it. Yet it allowed that debt to go unpaid

8

thereby failing to take any action to mitigate its damages." *Id.* at 73.

The Mississippi Supreme Court has not provided any further discussion of the "substitution theory," but the Mississippi Court of Appeals applied *Carter* in a later case, *Scottsdale Ins. Co. v. Deposit Guar. Nat'l Bank*, 733 So. 2d 863 (Miss. Ct. App. 1999) (Southwick, J.). In *Scottsdale*, the first insurer failed to provide statutory notice of non-renewal to the mortgagee. *Id.* at 864-65.[2] The mortgagee became aware that coverage had lapsed, and it procured replacement coverage under its blanket policy. *Id.* at 865. A tornado destroyed part of the property, and the mortgagee submitted a claim to the first insurer, which was denied. *Id.*

The first insurer argued "that by procuring coverage under its own blanket policy, [the mortgagee] in effect canceled the earlier policy," citing *Carter*. *Id.* at 866. The Court of Appeals disagreed:

> *Carter* holds that when the homeowner-mortgagor obtains a new policy, and the lender-mortgagee accepts payment from that second insurer, the first insurer who has not complied with the notice statute may be released from liability. In contrast, here the *mortgagee* turned to its umbrella policy. If an umbrella or similar coverage is called upon, the lender may significantly increase its costs due to the nature of the premiums or other details of the coverage. Such coverage is a precaution, not a replacement for another's insurance obligations.

*Scottsdale Ins. Co.*, 733 So. 2d at 866. Therefore, "the plain language of the statute continues the liability of the initial insurer until it provides notice to the mortgagee. If the lender learns in other ways and itself obtains separate coverage, this does not

---

[2]*Scottsdale* addressed compliance with Section 83-13-9, an analogous statute which requires every fire insurance policy to include a standard mortgage clause.

9

by itself end the insurer's liability for its default." *Id.* at 867.

Considering *Carter* and *Scottsdale* in tandem, the Court finds that the equitable "substitution theory" does not apply here. Unlike the mortgagee in *Carter*, Seaway has not received any payment from a substitute insurer. In fact, there was no coverage in place at the time of the loss other than Seaway's blanket policy. As Seaway received no payment from a replacement insurer, there is no danger of a double recovery, and the primary equitable consideration underlying *Carter* is inapplicable here. *See Carter*, 592 So. 2d at 73. Although Seaway had force-placed other coverage and allowed it to lapse, neither *Carter* nor *Scottsdale* suggest that a mortgagee is required to *maintain* replacement coverage after a first insurer's cancellation. While Seaway procured and maintained coverage under its blanket policy, *Scottsdale* provides that "[s]uch coverage is a precaution, not a replacement for another's insurance obligations." *Scottsdale*, 733 So. 2d at 866. For these reasons, the Court declines to apply the equitable "substitution theory" to this case.

## C.     *Punitive Damages*

In the alternative, GuideOne argues that the Court should grant summary judgment on the issue of punitive damages. GuideOne contends that its arguments above provided an arguable basis for denying Defendants' claim. "Under Mississippi law, punitive damages may be assessed against an insurer only when the insurer denies a claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991). An insurer has no arguable

basis for denying payment on a claim if "nothing legal or factual would have arguably justified" its position. *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 272 (5th Cir. 2008). Whether an insurer has an arguable basis for denying a claim is "an issue of law for the court." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008).

As the Court noted above, both the policy and Section 83-5-28 unambiguously required GuideOne to provide more than twenty-three days' notice to Mount Carmel before cancellation. However, in light of *Phoenix Insurance Company of Brooklyn v. Hunter*, 49 So. 740 (Miss. 1909), and the equitable "substitution theory" outlined in *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 72 (Miss. 1991), the Court can not conclude that "*nothing* legal . . . would have arguably justified" GuideOne's denial of coverage. *Essinger*, 529 F.3d at 272 (emphasis added). Although the Court ultimately rejected GuideOne's arguments, *Hunter* and *Carter* provide arguable bases for its decision to deny coverage. Accordingly, the Court grants its Motion for Summary Judgment as to Defendants' counterclaims for punitive damages.

## IV. SEAWAY'S MOTION FOR PARTIAL SUMMARY JUDGMENT [105]

### A.   *Breach of Contract*

Seaway argues that summary judgment is appropriate as to its claim for breach of contract. In Mississippi, a party asserting a breach of contract must prove 1) the existence of a valid and binding contract, and 2) that the opposing party has broken, or breached it. *Business Communs., Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012). If a party seeks monetary damages as a remedy for a breach of contract, they also

"must put into evidence, with as much accuracy as possible, proof of the damages being sought." *Id.* at 1225.

GuideOne does not dispute that the policy's provision requiring notice of cancellation to the mortgagee constitutes a "separate contract of insurance entered into between the mortgagee and the insurer." *Weems v. Am. Sec. Ins. Co.*, 450 So. 2d 431, 436 (Miss. 1984). GuideOne agreed [101-1] to "give written notice to the mortgageholder at least 30 days before the effective date of cancellation." Furthermore, Section 83-5-28 provides that its notice requirement "shall be deemed to be incorporated in the policy" if not expressly stated therein. MISS. CODE ANN. § 83-5-28(2). GuideOne admits that it only gave Seaway twenty-three days' notice of cancellation. Therefore, GuideOne breached the policy's notice requirement, and the Court grants Seaway's Motion for Summary Judgment as to its claim for breach of contract.

### B.   *Negligence*

Seaway argues that GuideOne's denial of its claim and failure to conduct a prompt investigation constitute negligence. However, these claims arise from GuideOne's failure to comply with the policy. The relationship between an insurer and insured is "contractual in nature . . . ." *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 n. 7 (5th Cir. 1988). Therefore, Seaway's negligence claims sound in contract, rather than tort, and the Court denies Seaway's Motion for Summary Judgment as to its negligence claim. *See O'Hara v. Travelers*, No. 2:11-CV-208-KS-MTP, 2012 U.S. Dist. LEXIS 104048, at *38-*39 (S.D. Miss. July 26, 2012) (where

claims arose from failure to pay benefits owed under policy, claims sounded in contract, rather than tort); *Law v. Aetna Life Ins. Co.*, No. 5:09-CV-116-DCB-JMR, 2011 U.S. Dist. LEXIS 75244, at *10 (S.D. Miss. July 12, 2011) (where claims arose from alleged breach of insurance policy, they were contract claims, not negligence claims).

## C. *Declaratory Judgment*

For the reasons provided above, the Court grants Seaway's Motion for Summary Judgment insofar as it requests a declaratory judgment that GuideOne's cancellation was ineffective, and that the policy was in effect on the date of loss.

## V. MOUNT CARMEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT [107]

For the reasons provided above, the Court grants Mount Carmel's Motion for Partial Summary Judgment [107] insofar as it requests a declaratory judgment that GuideOne's cancellation was ineffective, and that the policy was in effect on the date of loss.

## VI. GUIDEONE'S MOTION TO EXCLUDE EXPERT TESTIMONY [103]

GuideOne seeks the exclusion of Mount Carmel's expert witness, Jonathan Eric Elam. According to their designation [103-1] Mount Carmel expects Elam to "provide testimony and opinions regarding whether GuideOne had any arguable basis for refusing recognition of the policy with Mount Carmel and denying the subject claims." They also expect him to "provide expert testimony concerning whether the conduct of Plaintiff GuideOne was consistent with industry standards and practices regarding the investigation and payment of claims under the circumstances." In light of the Court's rulings above, Elam's testimony is irrelevant to any remaining issues in this case.

Therefore, the Court **grants** GuideOne's Motion to Exclude [103] his testimony.

## VII. C<small>ONCLUSION</small>

For the reasons stated above, the Court **grants in part and denies in part** Plaintiffs' Motion for Summary Judgment [101], **grants in part and denies in part** Defendant Seaway Bank and Trust Company's Motion for Partial Summary Judgment [105], **grants** Defendants Mount Carmel Ministries and Alpha Christian School's Motion for Partial Summary Judgment [107], and **grants** Plaintiffs' Motion to Exclude [103] the testimony of Mount Carmel's expert.

SO ORDERED AND ADJUDGED this 6th day of January, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE